## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**FORD MOTOR COMPANY,**

       Plaintiff,

**v.**

**PORTABLE SOLAR LLC, d/b/a SOL-ARK,**

       Defendant.

**Case No. 2:25-cv-13296**

**JURY DEMAND**

## COMPLAINT AND JURY DEMAND

Plaintiff, Ford Motor Company ("Ford"), files this Complaint against Defendant, Portable Solar LLC d/b/a Sol-Ark ("Sol-Ark"), and in support thereof alleges as follows:

## I.     NATURE OF ACTION

1.     This action arises out of Defendant Sol-Ark's improper disclosure of Ford confidential information and trade secrets in multiple Sol-Ark patent applications in violation of Sol-Ark's express confidentiality obligations to Ford.

2.     Sol-Ark (i) misappropriated Ford's trade secrets under the Defend Trade Secrets Act, (ii) misappropriated Ford's trade secrets under the Michigan Uniform Trade Secrets Act, (iii) breached its Non-disclosure Agreement with Ford, (iv) breached Ford's Production Global Terms and Conditions, (v) engaged in unfair competition, and (v) was unjustly enriched as a result of its wrongdoing.

## II.     PARTIES

3.     Plaintiff, Ford Motor Company, is organized under the laws of the State of Delaware with its principal place of business at One American Road, Dearborn, Michigan.

4.     Upon information and belief, Defendant Sol Ark is a limited liability company organized under the laws of Delaware, having a primary place of business at 805 S. Central Expressway, Allen, Texas.

### III.   JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 over Ford's claims pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(b). This Court has supplemental jurisdiction over the Michigan state law claims pursuant to 28 U.S.C. § 1367, because the state law claims are so related to the claims pursuant to the Defend Trade Secrets Act that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7.      This Court has personal jurisdiction over Defendant Sol-Ark because, in its two agreements with Ford relating to the subject matter of this Complaint, Defendant Sol-Ark expressly consented to resolving disputes arising from those agreements in this Court.

8.      In addition, on information and belief, Sol-Ark has continuous and systematic businesses within the State of Michigan and within the Eastern District of Michigan and has purposefully directed its activities to this State and District, including but not limited to the distribution of its products through its authorized dealerships located in this District, including United Business Technology, located at 353 Indusco Ct., Troy, Michigan.

9.      Venue is proper in this judicial district pursuant to at least 28 U.S.C. § 1391(b) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## IV.   FACTUAL BACKGROUND

10.    Ford has been designing and manufacturing vehicles since 1903.

11.    Ford's history of automotive innovation has been a cornerstone of its business since its inception in 1903.

12.    In 1998, Ford introduced its first production Battery Electric Vehicle ("BEV"). Since that time, Ford's BEV lineup has included the Focus Electric (introduced in 2011), the Mustang Mach-E (introduced in 2021) and the F-150 Lightning (introduced in 2022).

13.    Today Ford is among the top three BEV manufacturers in the United States.

14.    Specialized technology is required for efficiently charging and discharging electric vehicle batteries.  For each of its modern BEVs, Ford designed and manufactured proprietary Electric Vehicle Supply Equipment ("EVSE") for charging the vehicle battery.

15.    As Ford's BEV technology evolved, so did Ford's EVSE technology. Ford has received hundreds of patents directed to aspects of its innovative BEV and EVSE technology.

A.     **Ford Invents a Home Energy Management System Using BEV Power**

16.    In 2022, Ford engineers designed a Home Energy Management System ("HEMS") and energy "Combiner Box" configured to use a Ford BEV battery as a back-up energy source for the home in the event of a power outage.

17.    Due to the presence of an on-board inverter on Ford BEVs, specific control and communication requirements, and the nature of the physical power connection between the EVSE and the vehicle, Ford's HEMS and Combiner Box required specific and proprietary hardware configurations and control/communication functions not present in prior EVSE and power backup systems.

18.    Ford engineers created specifications, schematics, feature lists, and use cases for Ford's HEMS and Combiner Box technology for safely and efficiently (i) charging the BEV battery from the home when the home has excess energy available, according to customer preferences, and (ii) discharging the BEV battery to the home when a power-outage is detected at the home, also based on customer preferences.

19.    For homeowners owning or operating a BEV, Ford's new HEMS and Combiner Box technology would enable the homeowners to use their BEV as a home back-up energy supply, avoiding or reducing the need for costly back-up generators, solar cells or stationary battery systems.

4

### B.   Ford Engages Sol-Ark as the Supplier of Ford's HEMS and Combiner Box

20.    In November 2022, Ford contacted Sol-Ark as a potential supplier for the production design and manufacture of Ford's proprietary HEMS and Combiner Box technology.

21.    On November 7, 2022, Ford and Sol-Ark entered a Confidentiality and Non-Disclosure Agreement ("NDA") governing the parties' exchange of confidential information.  Under the NDA, neither Party was permitted to disclose confidential information received from the other Party for a specified period of time. Because the NDA is confidential, Ford does not attach it here.

22.    Upon entry of the NDA, Ford shared with Sol-Ark its confidential schematics, specifications, feature lists and use cases describing the details of Ford's next-generation HEMS and Combiner Box technology. Ford designated its materials confidential, and explained they were subject to the parties' NDA.

23.    In the subsequent months, Ford and Sol-Ark worked together to design a production version of Ford's HEMS and Combiner Box technology.

24.    In March 2024, Ford awarded Sol-Ark a production contract to manufacture Ford's HEMS and Combiner Box technology, subject to Ford's Production Global Terms and Conditions ("GT&Cs"). Ford's GT&Cs are attached hereto as Exhibit A.

25.    Like the parties' NDA, Ford's GT&Cs prohibited Sol-Ark from disclosing Ford's confidential information to third parties.

26.    In a March 13, 2024 electronic Statement of Work ("eSOW"), governing the Parties' production contract, Sol-Ark expressly agreed that Ford owned the intellectual property associated with the Combiner box assembly, architecture, concept, diagrams, and schematics and other features, and that other aspects of Ford's HEMS and Combiner Box, constitute a Work-for-Hire or development work Sol-Ark was to undertake for Ford that Ford would own under Ford's GT&Cs. Because the eSOW is confidential, Ford does not attach it here.

## C.    Unknown to Ford, Sol-Ark Filed Multiple Patent Applications Disclosing Ford's Confidential Technology

27.    On March 1, 2023 Sol-Ark filed a provisional patent application disclosing (and claiming as its own) Ford's confidential features and configurations that Ford possessed before its work with Sol-Ark, that Ford disclosed to Sol-Ark subject to Sol-Ark's confidentiality obligations, and that Sol-Ark agreed Ford owned.

28.    A true and correct copy of Sol-Ark's March 1, 2023 provisional patent application is attached as Exhibit B.

29.    On February 6, 2024, Sol-Ark filed a utility patent application disclosing Ford confidential features and configurations that Ford possessed before

its work with Sol-Ark, that Ford disclosed to Sol-Ark subject to Sol-Ark's confidentiality obligations, and that Sol-Ark agreed Ford owned.

30.     A true and correct copy of Sol-Ark's February 6, 2024 utility patent application is attached as Exhibit C.

31.     On April 22, 2024 Sol-Ark filed another utility patent application disclosing many confidential features and configurations that Ford possessed before its work with Sol-Ark, that Ford disclosed to Sol-Ark subject to Sol-Ark's confidentiality obligations, and that Sol-Ark agreed Ford owned.

32.     A true and correct copy of Sol-Ark's April 22, 2024 utility patent application is attached as Exhibit D.

33.     Pursuant to U.S. Patent & Trademark Office ("USPTO") procedures, Sol-Ark's patent applications remained confidential until August 8, 2024 at which point the USPTO published the patent applications and Ford discovered them.

34.     Sol-Ark never informed Ford that Sol-Ark intended to file, or did file, patent applications that disclose Ford's proprietary and confidential technology disclosed to Sol-Ark subject to Sol-Ark's confidentiality obligations.

35.     Ford's efforts to resolve this dispute amicably with Sol-Ark have failed, and Ford has ceased working with Sol-Ark.

## V. CLAIMS FOR RELIEF

### Count I
### Violation of Defend Trade Secrets Act 18 U.S.C. § 1836 *et seq.*

36.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

37.     At all times relevant to this Complaint, Ford owned the at-issue trade secrets. In the March 13, 2024 electronic Statement of Work ("eSOW") governing the Parties' production contract, Sol-Ark expressly agreed that Ford owned the intellectual property associated with the Combiner box assembly, architecture, concept, diagrams, and schematics and other features, and that other aspects of Ford's HEMS and Combiner Box constitute a Work-for-Hire or development work Sol-Ark was to undertake for Ford that Ford would own under Ford's GT&Cs.

38.     Pursuant to the relevant confidentiality provisions of the Parties' NDA and Ford's GT&Cs, Ford provided Sol-Ark with its proprietary, confidential, and trade secret information pertaining to Ford's next-generation HEMS and Combiner Box for the purpose of developing a production system that integrated Ford's proprietary concepts. This confidential information includes, without limitation, Ford's schematics, specifications, feature lists, and use cases describing the details of Ford's next-generation HEMS and Combiner Box technology.

39.     Ford's confidential information provided to Sol-Ark includes trade secrets protected under the Defend Trade Secrets Act because it was the subject of

Ford's reasonable measures to keep the information secret (including but not limited to the confidentiality agreements between Ford and Sol-Ark), and derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, others (including Ford's competitors) who can obtain economic value from the disclosure or use of the information by receiving at least a head start on the development of competitive technology.

40.     On March 1, 2023, February 6, 2024 and April 22, 2024, Sol-Ark secretly filed patent applications with the USPTO, disclosing Ford's trade secrets in its next-generation HEMS and Combiner Box technology.

41.     Ford did not authorize Sol-Ark to disclose Ford trade secrets in Sol-Ark's patent applications.

42.     Sol-Ark knew or had reason to know that, at the time they acquired information about Ford's trade secrets, this information was acquired and obtained under circumstances giving rise to a duty to maintain secrecy or limit use, including but not limited to the confidentiality terms in the agreements between the parties.

43.     Sol-Ark's use and disclosure of Ford's trade secrets constitutes actual misappropriation by Sol-Ark under 18 U.S.C. §§ 1836 and 1839.

44.     Sol-Ark has misappropriated Ford's trade secrets by incorporating them into Sol-Ark's patent applications, intends to continue misappropriating them by using them to further its business interests.

45.     Ford's trade secrets in its next-generation HEMS and Combiner Box technology are related to Ford products intended for use in interstate or foreign commerce.

46.     As a direct and proximate result of Sol-Ark's misappropriation and use of Ford's trade secrets, Ford has suffered and continues to suffer actual damages in an amount to be proven at trial.

47.     If Sol-Ark is permitted to continue to use and disseminate Ford's trade secrets, Ford will be irreparably harmed and the economic damages to Ford will be difficult to quantify. An injunction prohibiting Sol-Ark from further disclosure, use, and possession of the Ford's trade secrets is necessary to provide Ford with complete relief.

48.     Sol-Ark has been unjustly enriched by the misappropriation and use of Ford's trade secrets.

49.     Sol-Ark's misappropriation of Ford's trade secrets was willful and malicious, so as to justify an award of additional exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C).

50.     Because Sol-Ark's misappropriation was willful and malicious, Ford is also entitled to an award of reasonable attorney's fees and costs incurred during litigation pursuant to 18 U.S.C. § 1836 (b)(3)(D).

## Count II
## Violation of Michigan Uniform Trade Secrets Act M.C.L. § 445.1901 *et seq.*

51.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

52.     At all times relevant to this Complaint, Ford owned the at-issue trade secrets. In the March 13, 2024 electronic Statement of Work ("eSOW") governing the Parties' production contract, Sol-Ark expressly agreed that Ford owned the intellectual property associated with the Combiner box assembly, architecture, concept, diagrams, and schematics and other features, and that other aspects of Ford's HEMS and Combiner Box constitute a Work-for-Hire or development work. Sol-Ark was to undertake for Ford that Ford would own under Ford's GT&Cs.

53.     Pursuant to the relevant confidentiality provisions of the NDA and the GT&C, Ford provided Sol-Ark with confidential trade secret information for the sole purpose of developing a production system that integrated Ford's proprietary concepts. This confidential information includes, without limitation, Ford's schematics, specifications, feature lists, and use cases describing the details of Ford's next-generation HEMS and Combiner Box technology.

11

54.	Ford took care to safeguard its trade secrets, including but not limited to entering into two confidentiality agreements with Sol-Ark precluding Sol-Ark from disclosing Ford's confidential information to third parties.

55.	Ford's trade secrets have independent economic value arising from the fact that they are not readily ascertainable through proper means nor known to Ford's competitors, their customers, or the public at large who could obtain economic value from their use or disclosure.

56.	On March 1, 2023, February 6, 2024 and April 22, 2024, Sol-Ark secretly filed patent applications with the USPTO, disclosing Ford's trade secrets in its next-generation HEMS and Combiner Box technology.

57.	Ford did not authorize Sol-Ark to disclose Ford trade secrets in Sol-Ark's patent applications.

58.	Sol-Ark knew or had reason to know that, at the time they acquired information about Ford's trade secrets, this information was acquired and obtained under circumstances giving rise to a duty to maintain secrecy or limit use, including but not limited to the confidentiality terms in the agreements between the parties.

59.	Sol-Ark's disclosure and use of Ford's trade secrets amount to actual misappropriation under M.C.L. §§ 445.1902 and 445.1903.

60.     Sol-Ark has misappropriated Ford's trade secrets, incorporated them into Sol-Ark's patent applications, is using them, and intends to continue using them to further its business interests.

61.     Sol-Ark knew or had reason to know that, at the time it acquired information about Ford's trade secrets, the information was acquired and obtained under circumstances giving rise to a duty to maintain secrecy or limit use.

62.     As a direct and proximate result of Sol-Ark's misappropriation and use of Ford's trade secrets, Ford has suffered and continues to suffer actual damages in an amount to be proven at trial.

63.     As a direct and proximate result of Sol-Ark's misappropriation and use of Ford's trade secrets, Ford has suffered and continues to suffer irreparable harm and substantial injury, which cannot be fully redressed through damages alone.

64.     If Sol-Ark is permitted to continue to use and disseminate Ford's trade secrets, Ford will be irreparably harmed and the economic damages to Ford will be difficult to quantify. An injunction prohibiting Sol-Ark from further disclosure, use, and possession of the Ford's trade secrets is necessary to provide Ford with complete relief.

65.     Sol-Ark has been unjustly enriched by the misappropriation and use of Ford's trade secrets.

66.     Sol-Ark's misappropriation of Ford's trade secrets was willful and malicious, so as to justify an award of additional exemplary damages as well as an award of reasonable attorney's fees and costs incurred during litigation pursuant to M.C.L § 445.1905.

## Count III
## Breach of the Confidentiality and Non-Disclosure Agreement

67.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

68.     As a condition for the disclosure of Ford's confidential, proprietary, and trade secret information, Ford and Sol-Ark executed a confidential NDA, which prohibited Sol-Ark from, among other things, using or disclosing Ford's confidential, proprietary, and trade secret information.

69.     In the March 13, 2024 electronic Statement of Work ("eSOW") governing the Parties' production contract, Sol-Ark expressly agreed that Ford owned the intellectual property associated with the Combiner box assembly, architecture, concept, diagrams, and schematics and other features, and that other aspects of Ford's HEMS and Combiner Box constitute a Work-for-Hire or development work Sol-Ark was to undertake for Ford that Ford would own under Ford's GT&Cs.

70.     The NDA between Ford and Sol-Ark is a valid and enforceable contract as it contains reasonable restrictions that are designed to protect Ford's legitimate business interests.

71.     Sol-Ark breached the NDA by, without authorization, using and disseminating the confidential information it received under the NDA, including by filing patent applications using that information.

72.     Ford has sustained and will sustain damages as a direct and proximate result of Sol-Ark's breach of the NDA.

## Count IV
## Breach of Ford's Production Global Terms and Conditions

73.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

74.     As a condition for the disclosure of Ford's confidential, proprietary, and trade secret information, Sol-Ark agreed to Ford's GT&Cs, which prohibited Sol-Ark from, among other things, using or disclosing Ford's confidential, proprietary, and trade secret information. After defining "Confidential Information," Ford's GT&Cs state in relevant part:

**16.02**  Obligations and Standard of Care

(a)  The Buyer and the Supplier will each use Reasonable Care to protect the confidentiality of Confidential Information of the Other Party.  Reasonable Care is the standard of care that the party holding the

information would use in protecting the confidentiality of its own
confidential information. . . .

***

**16.04**   <u>Sharing with Other Third Parties</u>   Neither the Buyer nor the
Supplier will share any Confidential Information of the Other Party with
any third party, including any competitor of the other party, without the
prior written agreement of the other party, except as may otherwise be
permitted under the Purchase Order, a Technology Agreement, or other
written agreement between the parties.

75.    As reproduced in part below, Ford's GT&Cs expressly require Sol-

Ark to use Ford's intellectual property "only in the production and supply of the

Goods to [Ford] . . .."

**14.01**   <u>Buyer's Intellectual Property Rights</u>   The Buyer and its Related
Companies may have valuable Intellectual Property Rights in Tooling,
documents, and information provided to the Supplier. ***Intellectual
Property Rights*** include trademarks, trade dress, patents, copyrights, trade
secrets, and industrial design rights. The Supplier may use the Intellectual
Property Rights of the Buyer and its Related Companies only in the
production and supply of the Goods to the Buyer and its Related
Companies.

76.    Ford's GT&Cs define a valid and enforceable contract that Sol-Ark

agreed to.

77.    In the March 13, 2024 electronic Statement of Work ("eSOW")

governing the Parties' production contract, Sol-Ark expressly agreed that Ford

owned the intellectual property associated with the Combiner box assembly,

architecture, concept, diagrams, and schematics and other features, and that other

aspects of Ford's HEMS and Combiner Box constitute a Work-for-Hire or

16

development work Sol-Ark was to undertake for Ford that Ford would own under Ford's GT&Cs.

78.    Sol-Ark breached Ford's GT&Cs by, without authorization, disseminating Ford's confidential information Sol-Ark received when Sol-Ark filed patent applications disclosing that information.

79.    Ford has sustained and will sustain damages as a direct and proximate result of Sol-Ark's breach of Ford's GT&Cs.

## Count V
## Unjust Enrichment

80.    Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

81.    Through its work with Ford subject to the NDA and Ford's GT&Cs, Sol-Ark had access to and received Ford's confidential and trade secret information, including but not limited to Ford's schematics, specifications, feature lists, and use cases describing the details of Ford's next-generation HEMS and Combiner Box technology.

82.    In the March 13, 2024 electronic Statement of Work ("eSOW") governing the Parties' production contract, Sol-Ark expressly agreed that Ford owned the intellectual property associated with the Combiner box assembly, architecture, concept, diagrams, and schematics and other features, and that other

aspects of Ford's HEMS and Combiner Box constitute a Work-for-Hire or development work Sol-Ark was to undertake for Ford that Ford would own under Ford's GT&Cs.

83.     Sol-Ark unjustly retained the valuable benefit Ford conferred upon it against the fundamental principles of justice or equity and good conscious.

84.     Sol-Ark included Ford's confidential and trade secrets information in its several patent applications, holding that information out as its own to gain a competitive advantage for the benefit of Sol-Ark and to the detriment of Ford.

85.     As a direct and proximate cause of Sol-Ark's wrongful conduct, Ford has suffered damages in an amount to be proven at trial.

**Count VI**
**Unfair Competition**

86.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

87.     In the March 13, 2024 electronic Statement of Work ("eSOW") governing the Parties' production contract, Sol-Ark expressly agreed that Ford owned the intellectual property associated with the Combiner box assembly, architecture, concept, diagrams, and schematics and other features, and that other aspects of Ford's HEMS and Combiner Box constitute a Work-for-Hire or

development work Sol-Ark was to undertake for Ford that Ford would own under Ford's GT&Cs.

88.     Sol-Ark competed unfairly against Ford by conduct that includes the improper use and disclosure of Ford's confidential and trade secret information in Sol-Ark's patent applications, thereby seeking to preclude Ford from using and benefiting from its own confidential, proprietary, and trade secrets information, to Ford's competitive disadvantage.

89.     Sol-Ark is engaged in a business that is in competition of the business of Ford.

90.     As a direct and proximate cause of Sol-Ark's wrongful conduct, Ford has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Ford prays for judgment against Sol-Ark as follows:

1.     For a determination that Sol-Ark willfully and maliciously misappropriated Ford's trade secrets, under Federal and Michigan law;

2.     For a determination that Sol-Ark breached the Confidentiality and Non-disclosure Agreement;

3.     For a determination that Sol-Ark breached Ford's Production Global Terms and Conditions;

4.      For a determination that Sol-Ark engaged in unfair competition with Ford;

5.       For a determination that Sol-Ark was unjustly enriched as a result of its wrongdoing;

6.      For an order requiring Sol-Ark to identify, and turn over, any property in its possession, custody, or control containing or reflecting Ford's confidential information and trade secrets, including hard copy documents or any form of electronic storage media;

7.      For an order requiring Sol-Ark to identify any other persons, entities, or locations not within its possession, custody, or control, to which Sol-Ark has transmitted, disseminated, disclosed, or stored any of Ford's confidential information and trade secrets;

8.      For an order declaring that Sol-Ark and their agents, servants, employees, employers, and all persons acting under, in concert with, of or for them, are preliminarily and permanently enjoined from acts constituting a violation of the Defend Trade Secrets Act, the Michigan Uniform Trade Secrets Act, including the misappropriation of trade secrets, pursuant to 18 U.S.C § 1836(b)(3)(A) and M.C.L. §445.1901, and the equitable powers of the Court;

9.      For any other statutory remedies specified in the Defend Trade Secrets Act and the Michigan Uniform Trade Secrets Act the Court deems necessary and appropriate;

10.     For an order enjoining and restraining Sol-Ark from unfairly competing with Ford;

11.     For the damages Sol-Ark's wrongdoing has caused Ford;

12.     For Sol-Ark's unjust enrichment arising from its misuse of Ford's confidential information and trade secrets;

13.     For punitive and exemplary damages;

14.     For an award of attorney's fees as permitted under the Defend Trade Secrets Act, the Michigan Unform Trade Secrets Act, and inherent power of the Court;

15.     For an order awarding pre-judgment and post-judgment interest;

16.     For the costs incurred in this action; and

17.     For such other and further relief, at law or in equity, as the Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury of any and all issues triable of right by a jury in the above-captioned action.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

Dated:  October 17, 2025

 /s/  *John S. LeRoy*
John S. LeRoy (P61964)
150 W. Second Street, Suite 400N
Royal Oak, Michigan 48067
Telephone: (248) 358-4400
Facsimile: (248) 358-3351
Email:  jleroy@brookskushman.com

*Attorneys for Plaintiffs*